WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary B Frederick,<br><br>   Plaintiff,<br><br>v.<br><br>Victor M Garcia, et al.,<br><br>   Defendants. | No. CV-20-00929-PHX-DLR<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

The Court, having taken this matter under advisement after a trial to the bench on October 29, 2021, makes the following findings and conclusions:

**I. FINDINGS OF FACT**

  1. On March 29, 2018, Larry H. Miller Dodge Ram acquired a 2006 Dodge Ram 2500, VIN 1D7KS28D66J237686 ("Truck"), from Kenneth Rodney Ray, noting it had 255,113 actual miles. (Exh. 4.)

  2. On April 11, 2018, Larry H. Miller Dodge sold the Truck to M & Jr. Auto Sales LLC ("M & Jr."), certifying that the odometer read 255,114 actual miles. (*Id*.)

  3. M & Jr. is owned and managed by Michael Grant Randall, and his wife Jacqueline Randall.

  4. On April 18, 2018, M & Jr. applied for title to the Truck in its name. (Exh. 5.)

  5. M & Jr.'s title application reflected the Truck had 255,114 actual miles. (*Id*.)

6. On April 18, 2018, the Arizona Motor Vehicle Division ("MVD") issued title to the Truck to M & Jr. reflecting 255,114 actual miles. (Exh. 6.)

7. M & Jr. entered the odometer reading of 137,258 on the back of this title, and also marked the box indicating "Not Actual Mileage WARNING - ODOMETER DISCREPANCY." (*Id.*)

8. The same day, April 18, 2018, M & Jr. applied for a new title to the Truck, again in its name. (Exh. 7.)

9. M & Jr.'s title second title application reflected the Truck had 137,258 Box C, or not actual miles. (*Id.*)

10. On April 18, 2018, the Arizona MVD issued a second title to the Truck in M & Jr.'s name, with the mileage noted as 137,258 C, meaning not actual miles. (Exh. 8.)

11. While in the sole possession of M & Jr., the odometer to the subject Truck was altered to reflect 117,856 fewer miles than when M & Jr. purchased the Truck.

12. The mileage reading on the Truck was altered with the intent to mislead and defraud the subsequent purchasers of the Truck.

13. Michael and Jacqueline Randall claim that they did not purchase the Truck, but they admitted at trial that they learned before this suit that someone had used M & Jr's name and Power of Attorney to purchase the Truck from the auction, and to process the title transfers described above.

14. Although Michael and Jacqueline Randall knew of the transaction, and one other, they did not investigate to determine who used M & Jr.'s name and their Power of Attorney to purchase the Truck and process the title. They admitted that they did not inquire with the auction house where it was purchased in the name of M & Jr. to learn who the "phantom" buyer purchasing vehicles in the name of their business was.

15. On April 20, 2018, M & Jr. sold and transferred title to the Truck to Victor M. Garcia with 137,258 miles, with the box marked indicating "Not Actual Mileage WARNING - ODOMETER DISCREPANCY." (*Id.*)

16. On April 20, 2018, Mr. Garcia applied for a new title to the Truck in his

name, with 137,258 C miles, meaning not actual miles.  (Exh. 9.)

17. On April 20, 2018, the Arizona MVD issued Mr. Garcia a title to the Truck in his name, with the mileage noted as 137,258 C, meaning not actual miles.  (Exh. 2.)

18. Mr. Garcia testified that he bought the Truck to use in his plumbing business.

19. He decided to sell it after owning it for less than one year.

20. He decided to sell it after driving it approximately 1,500 miles.

21. In or about March 2019, Mr. Garcia placed an advertisement to sell the Truck on Facebook Marketplace.  (Exh. 1.)

22. In the advertisement, Mr. Garcia represented that the Truck had only 140,567 miles, with no indication that the miles were not actual miles.  (*Id.*)

23. Ms. Frederick saw the Facebook advertisement and contacted Mr. Garcia.

24. Mr. Garcia told Ms. Frederick that the Truck was clean but had three small cosmetic issues.

25. Mr. Garcia misrepresented to Ms. Frederick that it was a one-owner truck and that he had purchased it from one of his horse boarders.

26. Mr. Garcia did not tell Ms. Frederick that the Truck's odometer was not the actual mileage.

27. Mr. Garcia did not tell Ms. Frederick that the title to the Truck was "Box C," or not actual miles.

28. Relying upon Mr. Garcia's representations concerning the history of the Truck, and the mileage representations, Ms. Frederick drove from Lake Havasu City to meet with Mr. Garcia in Phoenix to inspect and test drive the truck.

29. Ms. Frederick testified that she believed Mr. Garcia's representations, and believed he was an honest man.

30. During their meeting, Mr. Garcia again misrepresented to Ms. Frederick that the Truck was a one-owner vehicle, and that he had purchased it from one of his horse boarders.

31. During their meeting, Mr. Garcia told Ms. Frederick that there was another

buyer looking to purchase the Truck who had checked the CarFax history and that the CarFax was clean.

32. Mr. Garcia also told Ms. Frederick that she could bring the Truck back at any time if she did not like it, and that if she did, he would drive her back to Lake Havasu City.

33. Ms. Frederick believed the representations made by Mr. Garcia concerning the Truck, including that the mileage was the true mileage the Truck had traveled.

34. Based upon these representations, Ms. Frederick agreed to purchase the Truck.

35. Ms. Frederick and Mr. Garcia both went to the MVD to transfer title to Ms. Frederick.

36. Prior to entry into the MVD office, Ms. Frederick paid Mr. Garcia $9,500 cash, which was the agreed-upon purchase price, approximately $2,000 more than Mr. Garcia paid for the truck.

37. Both Ms. Frederick and Mr. Garcia went to the MVD to transfer title to Ms. Frederick.

38. At the MVD, Mr. Garcia signed the back of the title certifying that the odometer reading was accurate and was actual miles.  (Exh. 2.)

39. While at the MVD counter, the clerk said there was an issue with the Truck's title, to which Mr. Garcia said something to the Clerk in Spanish, which Ms. Frederick did not understand.

40. Mr. Garcia then told Ms. Frederick that the issue was nothing.

41. The title was then processed and transferred into Ms. Frederick's name.

42. Ms. Frederick took the truck back to Lake Havasu City.

43. However, after driving the truck for a couple of days, the Truck overheated.

44. Ms. Frederick took the Truck to a local mechanic who found that there was no radiator fan.

45. The mechanic also looked up the Truck on CarFax and showed Ms. Frederick that the CarFax report reflected that the Truck had 255,114 miles on it just a year before.

46. After learning that the Truck had 117,000 more miles on it than what Mr. Garcia had told her, Ms. Frederick called Mr. Garcia several times but he did not answer his phone.

47. After a few days, Mr. Garcia finally answered the phone.

48. Ms. Frederick told Mr. Garcia that she was returning the truck to him because it had over 255,000 miles.

49. Mr. Garcia then told Ms. Frederick that if she set foot on his property, he will have her arrested for trespassing.

50. Without any resolution with Mr. Garcia on the Truck, a short time later, Ms. Frederick hooked up her fifth-wheel trailer to the Truck and headed out of town to go back to Minnesota.

51. On the first hill out of Lake Havasu City, the truck broke down and Ms. Frederick had to limp it back to town.

52. Upon having it inspected by a mechanic, she learned that the engine had blown, and needed to be replaced.

53. Ms. Frederick paid to have a new engine installed in the Truck.

54. Mr. Garcia represented to Ms. Frederick that the truck had 140,467 miles and was worth approximately the amount she paid - $9,500.

55. The Truck with more than 255,000 miles, and with the title branded "Box C," and "Not Actual Miles," was worth no more than $3,000.

56. Ms. Frederick would not have purchased the Truck had she known it had more than 255,000 miles.

57. Ms. Frederick would not have purchased the Truck had she known the odometer had been rolled back or altered.

## II. CONCLUSIONS OF LAW

### A. Overview of Federal Odometer Act

Congress passed the Odometer Act in 1972, amended it in 1976, 1986, 1988, 1990, and 1998, and recodified it in 1994. Congress' intent in passing the Act was to prevent

odometer tampering, and to provide other general safeguards for the protection of consumers. 49 U.S.C. § 32701. Being a remedial statute, the Act is to be broadly construed in order to effectuate its consumer protection purposes. *Hughs v. Box,* 814 F.2d 498, 501 (8th Cir. 1987).

The Odometer Act has five substantive provisions relating to odometers:

1. The Act prohibits odometer tampering.

2. The Act establishes procedures to follow when a motor vehicle repair results in a change in the odometer reading.

3. The Act requires, each time a vehicle is transferred, that the transferor disclose the odometer reading and whether the odometer reading is accurate, has exceeded its mechanical limits, or is inaccurate.

4. The Act prohibits false statements in conjunction with the disclosures; and

5. The Act prohibits parties from conspiring to violate any of the Act's provisions.

The regulations that implement the statute require that "each transferor shall disclose the mileage in writing on the title" or "on the document being used to reassign the title," and the transferor must certify that "to the best of his knowledge the odometer reading reflects the actual mileage." 49 U.S.C. § 32701(b); 49 C.F.R. § 580.5 (c), (e); *see Raatz v. Dealer Trade, Inc.*, No. CV-16-00170-PHX-DGC, 2017 WL 67547, at *2 (D. Ariz. Jan. 6, 2017).

**B.     Violations of the Federal Odometer Act**

1. Buyers of motor vehicles rely on the odometer reading as an index of the condition and value of the vehicle. 49 U.S.C. § 32701(a)(1).

2. Buyers are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle. 49 U.S.C. § 32701(a)(2).

3. An accurate indication of the mileage assists a buyer in deciding on the safety and reliability of the vehicle. 49 U.S.C. § 32701(a)(3).

4. M & Jr. is a transferor under the Act. 49 C.F.R. § 580.3 ("Transferor means

- 6 -

any person who transfers their ownership of a motor vehicle by sale, gift, or any means other than by the creation of a security interest, and any person who, as agent, signs an odometer disclosure statement for the transferor.").

5. Michael Grant Randall and Jacqueline Randall are liable for the actions of M & Jr.

6. Garcia is a transferor under the Act.

7. Ms. Frederick is a transferee under the Act. 49 C.F.R. § 580.3 ("Transferee means any person to whom ownership of a motor vehicle is transferred, by purchase, gift, or any means other than by the creation of a security interest, and any person who, as agent, signs an odometer disclosure statement for the transferee.").

8. M & Jr. altered or caused the odometer reading on the Truck to reflect fewer miles than the Truck had actually traveled in violation of 48 U.S.C. § 32703(2).

9. M & Jr. altered or caused the odometer reading on the Truck to reflect fewer miles with the intent to defraud future purchases, including Ms. Frederick.

10. Mr. Garcia, knowing that the odometer reading was wrong, made false representations in his advertisement on Facebook Marketplace and to Ms. Frederick, that the mileage on the Truck was 140,567 miles with the intent that his purchaser rely upon such representation. 49 U.S.C. § 32705(a)(2).

11. Mr. Garcia made his false representations with the intent that Ms. Frederick would rely on them in order to defraud Ms. Frederick.

12. M & Jr.'s violations of the Act caused Ms. Frederick to suffer actual damages in the amount of $6,500, the difference in the Truck's value as represented as compared to its actual condition and mileage.

13. Mr. Garcia's violations of the Act caused Ms. Frederick to suffer actual damages in the amount of $6,500, the difference in the Truck's value as represented as compared to its actual condition and mileage.

**IT IS ORDERED** that Plaintiff Mary B. Frederick is entitled to judgment against Michael Randall, Jacqueline Randall, and Victor M. Garcia, jointly and severally, in the amount of $6,500.00.

**IT IS FURTHER ORDERED** that Plaintiff submit a proposed form of judgment to the Court by no later than November 24, 2021.

Dated this 18th day of November, 2021.

Douglas L. Rayes
United States District Judge